Carolyn LEE and Keith Cummings,
Appellants

v.

DANIELS & DANIELS, Appellee.

No. 04–07–00096–CV.

Court of Appeals of Texas,
San Antonio.

May 14, 2008.

Rehearing Overruled July 28, 2008.

Thomas H. Crofts, Jr., Crofts & Callaway, P.C., Joel H. Klein, Joel H. Klein & Associates, San Antonio, TX, for Appellants.

Timothy J. Daniels, Daniels & Daniels, San Antonio, TX, for Appellee.

Sitting: CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION ON APPELLANTS' MOTION FOR REHEARING

SANDEE BRYAN MARION, Justice.

This is an appeal from an arbitration award in favor of appellee, Daniels & Daniels. In an opinion and judgment dated February 13, 2008, we reversed the trial court's judgment in part and remanded for entry of judgment consistent with our opinion because we concluded the trial court erred in affirming portions of the arbitration award. Appellants filed a motion for rehearing. We grant the motion for rehearing, vacate our earlier judgment, withdraw our earlier opinion, and issue this opinion and judgment in their place.

### BACKGROUND

In 2002, Keith Cummings retained the law firm of Daniels & Daniels to provide legal services in connection with Cummings's divorce and child custody proceedings. The parties executed an engagement letter, which was signed by Timothy Daniels on behalf of Daniels & Daniels, Cummings as the client, and Cummings's mother, Carolyn Lee, as guarantor/obligor. Pursuant to the engagement letter, attorney's fees would be charged on an hourly basis at a rate of $200 per hour, and Lee agreed "to pay up to" $10,000. Lee and her husband eventually paid over $43,000 to the firm.

During the course of Daniels's representation of Cummings, the parties' relationship eventually proved problematic, and Daniels moved to withdraw as counsel. The trial court denied the motion and Daniels filed a petition for writ of mandamus, which this court granted directing the trial court to grant the motion to withdraw. *See In re Daniels,* 138 S.W.3d 31 (Tex. App.–San Antonio 2004, orig. proceeding). Cummings's dispute with his former wife was eventually resolved through representation by another attorney.

Daniels sued Cummings and Lee (collectively hereinafter "appellants") for breach of the agreement to pay his fees and expenses and for breach of the agreement to arbitrate the dispute over his unpaid fees and expenses. After Daniels filed a motion to compel arbitration, and after agreeing on an arbitrator and one continuance, arbitration was set to commence on January 9, 2006. However, on December 30, 2005, Daniels filed his fifth amended petition in which he changed the designated plaintiff from Daniels & Daniels to Timothy J. Daniels & Associates, P.C., d/b/a Daniels and Daniels (hereinafter, "Timothy J. Daniels & Associates"). On January 5, 2006, appellants filed a motion for continuance, in which they stated that "[a]lthough these issues are not a total surprise to the Defendants, Defendants' trial strategy and pleadings will have to be revamped in order to properly litigate this matter, therefore the 'surprise factor' does play into this late filing by Daniels and Daniels." Following a January 6, 2006 hearing, the trial court denied the motion for continuance.

Arbitration commenced on January 9, 2006. On that same date, appellants filed their fourth amended answer, in which they asked the arbitrator to abate arbitration. In their amended answer, appellants asserted they needed additional time "to file a cause of action against the party whom they believed they were doing business with in regards to the contract at issue in this cause of action." Appellants contended they "would be prejudiced if they were not allowed to bring their claim against Timothy J. Daniels & Associates, P.C., d/b/a Daniels and Daniels, individually prior to the arbitration of this lawsuit." Appellants also claimed Timothy J. Daniels & Associates lacked standing to sue on the contract because it was not in privity to the contract and that Timothy J. Daniels &

Associates was not authorized to do business as Daniels & Daniels at the time the parties entered into the contract. The arbitrator refused to abate the proceeding. Arbitration convened over a period of seven days, after which the arbitrator found in favor of Timothy J. Daniels & Associates. This appeal ensued.

## EXISTENCE OF AGREEMENT TO ARBITRATE

■ Appellants acknowledge the existence of an arbitration agreement between themselves and Daniels & Daniels, but they insist no such agreement exists between themselves and Timothy J. Daniels & Associates. Thus, in their first issue, appellants assert Timothy J. Daniels & Associates failed to obtain a finding from the trial court that a valid agreement to arbitrate existed and they argue the arbitration award should be vacated because the arbitrator exceeded his power by enforcing a non-existent arbitration agreement. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex.2001) (orig. proceeding) (party seeking to compel arbitration must first establish the existence of an arbitration agreement).

The record does not contain any objection to arbitration. Instead, prior to the January 9, 2006 arbitration date, appellants filed a motion for continuance with the trial court. The basis of the motion was not that a valid arbitration agreement did not exist; instead, in both their motion for continuance and at the hearing on the motion, appellants focused their argument on a need to identify the proper party for the purpose of raising defenses to Daniels's claims and for the purpose of either party collecting on any award by the arbitrator. At no time did appellants inform the trial court that they were challenging the existence of a valid agreement to arbitrate. In their amended answer, filed the

morning arbitration commenced, appellants asked that the arbitration proceeding be abated, but they did not contest the validity of the agreement to arbitrate. In their application to modify, correct and/or vacate the arbitration award, appellants likewise never complained that a valid agreement to arbitrate did not exist. In fact, in their prayer for relief, appellants requested either that the award be vacated and a new arbitrator be appointed or, alternatively, that the amount of damages awarded be modified or corrected. Appellants did not ask that the award be vacated on the grounds that no valid agreement existed. Nor did appellants raise a complaint regarding the validity of the agreement to arbitrate in their motion to reconsider. One month after the trial court confirmed the arbitrator's award, appellants, for the first time, asserted Daniels did not establish the existence of an arbitration agreement. Because appellants participated in the arbitration proceeding without raising the objection, we conclude that appellants' objection regarding the lack of a valid agreement, raised for the first time after judgment was entered, is waived. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.088(a)(4) (Vernon 2005) (trial court may vacate award if "there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection.").

## MOTIONS FOR CONTINUANCE

■ As an alternative argument, appellants contend the trial court erred in denying their motion for continuance after Daniels filed his amended pleading showing Timothy J. Daniels & Associates as the plaintiff. Appellants contend the trial court erred because the substitution of Timothy J. Daniels & Associates as the new and only plaintiff eliminated the coun-

ter-defendant from whom they sought relief.[1] Appellants contend they did not have a fair opportunity to "re-adjust" their pleadings to take this new plaintiff into account.

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Thomas James Assoc., Inc. v. Owens,* 1 S.W.3d 315, 322 (Tex.App.–Dallas 1999, no pet.). The record reveals Daniels designated Timothy J. Daniels & Associates as the plaintiff in response to appellants' attorney's request for clarification of the plaintiff's proper name, and no new claims were added in the amended petition. In their motion for continuance, appellants stated that the designation of Timothy J. Daniels & Associates as plaintiff, the inclusion of ratification as an element of the breach of contract claim, and the inclusion of additional damages were "not a total surprise" to them. At the hearing on the motion, Daniels agreed to stipulate that Timothy J. Daniels & Associates had been assigned all rights under the contract. The trial court specifically noted Daniels stipulated that "Timothy J. Daniels and Associates, P.C. is the correct plaintiff for all purposes." On this record, we cannot conclude the trial court abused its discretion in denying the requested continuance.

## ATTORNEY'S FEES

Appellants next challenge the award to Timothy J. Daniels & Associates of fees exceeding the $10,000 cap stated in the engagement letter, fees incident to Daniels's motion to withdraw, and fees incident to the arbitration proceeding.

### A. Fees In Excess of $10,000

■ In Daniels's fifth amended petition, he acknowledges that the engagement letter was "intended to limit the maximum fees Carolyn Lee would owe Daniels & Daniels to $10,000.00...." Daniels sued for additional fees, alleging the parties agreed to modify the engagement letter in order for Daniels to continue to represent Cummings when litigation became protracted causing his fees to exceed $10,000. Daniels also asserted Lee waived any limit to her obligation by paying amounts over the $10,000 during the course of his representation of Cummings. After the arbitrator awarded additional fees to Daniels, Lee asked the trial court to vacate that part of the award on public policy grounds, arguing that Daniels failed to inform her that her status as guarantor/obligor extended her obligation to pay Daniels's fees over $10,000.

■ The Texas Civil Practice and Remedies Code provides the limited circumstances under which an arbitration award may be vacated, modified, or corrected. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.088, 171.091. However, an arbitration award also may be set aside in "an extraordinary case in which the award clearly violates carefully articulated, fundamental policy." *CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 239 (Tex.2002). An arbitration award cannot be set aside on "general considerations of supposed public interests." *Id.* Thus, "any claimed violation of such public policy must be carefully scrutinized to protect the arbitra-

1. Appellants also contend the trial court erred in denying their request for a continuance because Daniels had not met his burden of establishing a valid agreement to arbitrate. In the further alternative, they assert the arbitrator erred in denying their request for an abatement, and the trial court should have vacated the arbitrator's award because the arbitrator improperly refused to abate the arbitration proceedings, again, because no valid agreement to arbitrate exists. However, as we have already held, this complaint was not preserved.

tion award from unwarranted judicial interference." *Id.*

■ We agree with appellants that "because of the special professional relationship [between an attorney and his client], the contract must be fair, honest, reasonable, and made freely and voluntarily by the client after complete disclosure of all contract details." *Robinson v. Garcia*, 804 S.W.2d 238, 251 (Tex.App.–Corpus Christi 1991) (Nye, J., concurring), *writ denied*, 817 S.W.2d 59 (Tex.1991). An attorney bears "the burden of showing that such an agreement is perfectly fair, adequate and equitable and that the attorney did not take advantage of the client's confidence to create an unfair agreement." *Id.* (citing to *Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex.1964)). But the question of whether Daniels met this burden was a question for the arbitrator to decide, and appellants present no basis under Civil Practice and Remedies Code sections 171.088 or 171.091 that permit this court to reexamine whether Daniels met his burden.[2] Instead, on appeal, appellants assert the arbitrator's award should be set aside because the award "violates carefully articulated, fundamental policy." Although appellants do not articulate the specific policy they believe has been violated, they assert an attorney must demonstrate that an agreement for additional compensation was executed freely, voluntarily, and with full understanding by the client. According to appellants, the award of fees violates public policy because it is predicated on a supposed modification of the engagement letter that resulted from Daniels's threat to withdraw from representation unless Lee agreed to a greater obligation. Appellants argue that if a new agreement is made based on a lawyer's threat to withdraw from representation, the agreement is not free of undue influence.

■ A threat to do what one has a legal right to do is insufficient to create duress. *Windham v. Alexander, Weston & Poehner, P.C.*, 887 S.W.2d 182, 184 (Tex.App.–Texarkana 1994, writ denied). Here, Daniels was entitled to warn appellants that he would withdraw from representation unless he was paid additional fees for additional services rendered. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.15(b)(5) (attorney may withdraw if client "fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services, including an obligation to pay the lawyer's fees as agreed"). Appellants do not dispute that Daniels provided the services upon which his additional fees were based. As this court held in *In re Daniels*, Daniels had the right to withdraw and he established good cause for his withdrawal. 138 S.W.3d at 35. Thus, we hold that the arbitrator's award of fees exceeding $10,000 does not *per se* violate any "carefully articulated, fundamental policy." Therefore, the trial court did not err in confirming this portion of the arbitrator's award.

## B. Fees Incident to Motion to Withdraw

■ The arbitrator also awarded Daniels fees associated with his motion to withdraw and the mandamus proceeding. Appellants assert payment of these fees is unconscionable and violates public policy because, "[a]s a matter of law, a competent lawyer would not charge his client time devoted to withdrawing from the representation." Daniels counters that the engagement letter specifically provides that Cum-

---

**2.** We also note the record on appeal contains only a partial transcript of the seven-day-long proceedings before the arbitrator.

mings and Lee would "pay for all time spent, costs and expenses incident to withdrawal as attorney of record to include, but not limited to, airfare, mileage, motel, and lodging."

The determination of whether a fee agreement between an attorney and client is unconscionable at the time it is formed is a question of law that we review *de novo.* *Hoover Slovacek LLP v. Walton,* 206 S.W.3d 557, 562 (Tex.2006) (citing Tex. Bus. & Com.Code Ann. § 2.302 (Vernon 1994) for the proposition that "courts may refuse to enforce contracts determined to be unconscionable as a matter of law"). Unconscionability has no single legal definition and must be determined on a case by case basis in light of a variety of factors. *See Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 498 (Tex.1991) (Gonzalez, J., concurring). "When interpreting and enforcing attorney-client fee agreements, it is 'not enough to simply say that a contract is a contract. There are ethical considerations overlaying the contractual relationship.'" *Hoover Slovacek,* 206 S.W.3d at 560 (quoting *López v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 868 (Tex.2000) (Gonzales, J., concurring and dissenting)). Paramount among those ethical considerations is the fiduciary obligation mandated by the professional nature of the attorney-client relationship. *See id.* at 561 (attorneys have a special responsibility to maintain the highest standards of conduct and fair dealing); *see also Archer v. Griffith,* 390 S.W.2d 735, 739 (Tex.1964) (attorney-client relationship is highly fiduciary in nature); *Dow Chemical Co. v. Benton,* 163 Tex. 477, 357 S.W.2d 565, 567 (1962) (attorneys are members of an ancient profession with unique privileges and corresponding responsibilities).

Here, Cummings employed the law firm of Daniels & Daniels in November 2002 to provide "legal services" in connection with his divorce and child custody dispute. Both Daniels and Cummings signed a written three and one-half page engagement letter drafted by Daniels. Lee also signed as Guarantor/Obligor. In January and again in March 2004, Daniels sought to withdraw from the representation of Cummings on the grounds of non-payment of fees and difficulty in representation caused by the actions of Cummings and his mother. Cummings opposed both motions to withdraw, and the trial court denied the motions. Daniels then successfully sought mandamus relief from this court on the basis that he had established good cause justifying his withdrawal. *See In re Daniels,* 138 S.W.3d at 35. Thereafter, Daniels brought this suit against appellants to recover additional fees, including his attorney fees for self-representation in securing permission to withdraw. Ultimately, the arbitrator awarded Daniels $15,046.13 as "attorneys's fees in connection with the withdrawal and Mandamus," plus $1,802.97 as accrued interest and continuing interest until paid, separate from the damages awarded on the breach of contract action. On appeal, appellants seek to vacate this part of the arbitration award arguing it contravenes public policy prohibiting unconscionable fees. We agree.

An unconscionable fee violates public policy. *See Hoover Slovacek,* 206 S.W.3d at 562. Under the Disciplinary Rules, "[a] fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable." Tex. Disciplinary R. Prof'l Conduct 1.04(a). Implicitly, if not explicitly, the Disciplinary Rules demand that a reasonable legal fee be charged only for **legal services.** *See id.* 1.04(b)(1) ("... and the skill requisite to perform the *legal service* properly"); 1.04(b)(3) ("... the fee customarily charged in the locality for *similar legal services*"); 1.04(b)(7) ("... the experi-

ence, reputation, and ability of the lawyer or lawyers *performing the services*"); 1.04(b)(8) ("... or uncertainty of collection before the *legal services* have been rendered"). Legal services are services performed or rendered on behalf of a client. *See Crain v. The Unauthorized Practice of Law Comm.*, 11 S.W.3d 328, 333 (Tex. App.–Houston [1st Dist.] 1999, pet. denied) (noting practice of law embraces action taken for clients); *Brown v. Unauthorized Practice of Law Comm.*, 742 S.W.2d 34, 41 (Tex.App.–Dallas 1987, writ denied) (same); TEX.R. EVID. 503(a)(1) (defining client as one who is rendered legal services); *see generally* BLACK'S LAW DICTIONARY 1399 (8th ed.2004) (defining service as act of doing something useful for another person).

Turning to the one sentence withdrawal provision at issue here, it broadly mandates that Cummings pay Daniels's hourly rate for "all time spent" incident to withdrawal, regardless of whether or not legal services were rendered on behalf of Cummings. Indeed, Daniels sought reimbursement for all time spent in his efforts to terminate his attorney-client relationship with Cummings including time spent adversarial to his own client. None of that time was spent engaged in "legal services" performed or rendered on behalf of Cummings, his client.[3] *See Crain*, 11 S.W.3d at 333; *Brown*, 742 S.W.2d at 41. Instead, Daniels spent that time engaged in services performed for his own benefit. *See Scolaro v. State ex rel. Jones*, 1 S.W.3d 749, 756 (Tex.App.–Amarillo 1999, no pet.)

(services rendered for one's own interest are not considered to be the practice of law by the State Bar of Texas). No lawyer could form a reasonable belief that time spent adversarial to the client and in pursuit of the lawyer's own interests is the rendering of "legal services" for the client. Thus, no lawyer could form a reasonable belief that fees incident to such time spent were reasonable. Therefore, we hold the particular withdrawal provision at issue here, which because of its broad nature allows the recovery of such fees, is unconscionable and contravenes Texas public policy as a matter of law.[4] TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(a) ("[a] fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable").

We recognize our holding may impose a burden on a withdrawing attorney with legitimate reasons to terminate the attorney-client relationship. Frankly, however, our ethical and fiduciary obligations require no less. It is simply one of the costs that must be borne by a professional who operates under the mantle of a fiduciary duty. As a professional, an attorney's relationship to his client is **not** to be guided by "the morals of the marketplace." *Hoover Slovacek*, 206 S.W.3d at 561. Otherwise, we relegate our profession to an ordinary business relationship. *See Bohatch v. Butler & Binion*, 977 S.W.2d 543, 560 (Tex.1998) (Spector, J., dissenting) ("[a]s attorneys, we bear responsibilities to our clients and the bar itself that transcend ordinary business relationships").

---

**3.** Daniels's own pleadings distinguished between the different fees he sought. One part of his suit sought unpaid fees for "services performed" in connection with the divorce/custody matter. A separate part of his suit relevant here sought withdrawal fees, costs and expenses "incident to Plaintiff's withdrawal and the necessary and successful mandamus action."

**4.** Our holding should not be construed as preventing an attorney from recovering fees associated with a withdrawal that are rendered on the client's behalf, such as fees for drafting a status report to the court or for transferring client files to the new attorney.

For these reasons, we hold that the trial court erred in confirming this portion of the arbitrator's award.

### C. Fees Incurred In Arbitration Proceeding

██ Appellants also complain about the award of attorney's fees to Daniels for his fees incident to the arbitration proceeding. Appellants assert Daniels is not entitled to recover attorney's fees associated with the arbitration proceeding because such fees are not attributable to a claim under Texas Civil Practice and Remedies Code section 38.001. An arbitrator "shall award attorney's fees as additional sums required to be paid under the award only if the fees are provided for: (1) in the agreement to arbitrate; or (2) by law for a recovery in a civil action in the district court on a cause of action on which any part of the award is based." TEX. CIV. PRAC. & REM.CODE ANN. § 171.048(c). Here, the engagement letter does not expressly provide for the recovery of attorney's fees in an arbitration proceeding. However, because Daniels sued appellants for breach of the written engagement letter, Daniels was entitled to recover his attorney's fees incurred on that claim under Texas Civil Practice and Remedies Code section 38.001, which provides for recovery of "reasonable attorney's fees" "if the claim is for ... an oral or written contract." *Id.* § 38.01(8). Thus, section 38.01(8) provided a basis for an award of attorney's fees to Daniels in an arbitration proceeding. However, as discussed further below on rehearing, we believe remand for a redetermination of these fees is required.

### ARBITRATION FEES

██ Finally, appellants assert the arbitrator exceeded his power by assessing 100% of his fees against them. *See* TEX. CIV. & PRAC. REM.CODE ANN. § 171.088(a)(3) (court shall vacate award if arbitrator exceeded his powers). We agree with appellants. The Civil Practice and Remedies Code provides that, "[u]nless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, with other expenses incurred in conducting the arbitration, shall be paid as provided in the award." *Id.* § 171.055. The engagement letter expressly provides that "[t]he cost of the arbitrator will be paid fifty percent (50%) by the client and fifty percent (50%) by Daniels & Daniels." Therefore, when the arbitrator assessed 100% of his fees against appellants, he exceeded his power because the parties had "otherwise provided in the agreement to arbitrate" to split the fees. Accordingly, the trial court erred in confirming this portion of the arbitrator's award.

### MOTION FOR REHEARING

██ On rehearing, appellants argue a reduction in the award to Daniels necessitates a redetermination of the attorney's fees awarded to Daniels pursuant to Civil Practice and Remedies Code section 38.001. We agree that the arbitrator must be given an opportunity to reconsider the attorney's fees award. "Not every appellate adjustment to the damages which a jury considered as 'results obtained' when making attorney's fees findings will require reversal." *Barker v. Eckman,* 213 S.W.3d 306, 314 (Tex.2006). However, unless we are "reasonably certain that the [factfinder] was not significantly influenced by the erroneous amount of damages," *id.,* "the issue of attorney's fees should be retried if the damages are reduced on appeal." *Young v. Qualls,* 223 S.W.3d 312, 314 (Tex.2007). Our resolution of this appeal results in an approximate forty percent reduction of the actual damages awarded to Daniels. Taking into account the difference between the erroneous and correct amounts of damages, we cannot be

reasonably certain that the arbitrator was not significantly affected by the error. *See Qualls,* 223 S.W.3d at 315; *Barker,* 213 S.W.3d at 314. Therefore, the case must be remanded for a new trial on the amount to be awarded, if any, of attorney's fees associated with the arbitration and any appeal.

## CONCLUSION

We conclude the trial court erred in confirming that portion of the arbitrator's award of $15,046.13 to Daniels for his fees incident to his motion to withdraw and that portion of the arbitrator's award of $7,250.00 to Daniels as his part of the arbitrator's fee. We also conclude the reduction in the actual damages awarded to Daniels necessitates a reconsideration of the attorney's fees awarded to him. We therefore affirm in part and reverse in part the trial court's judgment and remand to the trial court for further proceedings consistent with this opinion.